PEOPLES BANK & TRUST CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2693–67.   Filed August 19, 1968.

*Thomas J. Young* and *Ernest Knox*, for the petitioner.

---

[7] This figure was 11 at the time the "1244 plan" was adopted.

*Wayne I. Chertow*, for the repondent.

DAWSON, *Judge:* Respondent determined the following income tax deficiencies against the petitioner:

| Year | Deficiency |
|------|-----------|
| 1962 | $10, 856. 96 |
| 1963 | 2, 476. 99 |
| 1964 | 3, 788. 80 |

By amended answer respondent claims additional deficiencies of $169.55 for 1962 and $100 for 1964. Certain adjustments have not been placed in controversy by petitioner. The principal issue for decision is whether petitioner is entitled to interest expense deductions for amounts which, under its regular and longstanding method of accounting, were accrued as expenses in the months of November and December of each of the years in issue. If not, we must determine whether the adjustments made by respondent constituted a change in petitioner's method of accounting authorizing an adjustment under section 481 (a) (2), I.R.C. of 1954.[1]

#### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Peoples Bank & Trust Co. (sometimes referred to herein as Peoples Bank) is an Indiana banking corporation [2] which had its principal office in Indianapolis, Ind., at the time the petition was filed in this proceeding. Its Federal corporation income tax returns for the years 1962, 1963, and 1964 were filed with the district director of internal revenue at Indianapolis, Ind.

Peoples Bank has maintained a savings department for 30 years, paying interest on passbook savings accounts and certificates of deposit. A specified interest rate, which is subject to State control and to periodic change, is paid on each type of deposit, the rate being higher on the certificates of deposit because of a time restriction, usually 6 months, on their withdrawal.

The payment of interest on the passbook savings accounts is governed in part by the following contractual provision: [3]

Interest will be computed semi-annually and will be credited to savings accounts on May 1st and November 1st at the current rate on sums which shall have been on deposit for the space of one or more calendar months previous to the first day of May and November except that no interest shall be paid when

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

[2] Peoples Bank is not a mutual savings bank, a cooperative bank, or a domestic building and loan association within the provisions of secs. 591 through 594.

[3] In the absence of evidence to the contrary, we find that interest was computed in like manner on the certificates of deposit. Reference herein to interest shall be to interest on all savings deposits.

the amount of interest is less than ten cents (10¢) for any interest period. Interest shall not be computed on sums withdrawn. Money withdrawn shall be deducted from the balance as of the previous interest paying date, or if the balance then be insufficient from the deposits next in order. Interest is not paid on daily or average balances. Interest not withdrawn will be added to the principal and thereafter be entitled to interest the same as the original deposit, thereby giving the depositors compound interest.

As a result, interest is paid on moneys on deposit during November and December only to the extent that all or a portion thereof is on deposit on May 1 of the following year. It is the practice of Peoples Bank to pay interest for the full month on deposits made by the 10th day of the month.

Peoples Bank regularly maintains its books and files its Federal income tax returns on a calendar year basis employing an accrual method of accounting. Its taxable income for the years in issue was computed under the method of accounting on the basis of which it regularly computed its income in keeping its books.

Since interest is credited to the accounts of savings depositors on May 1 and November 1 of each year, at the end of its accounting period the bank has made no interest payments on deposits held through November and December. For each of these months, however, Peoples Bank posts an amount to a reserve representing "accrued" interest expense and deducts the 2-month total from income in its return.

The amount of claimed expense is computed by applying an "experience factor" to the savings account balances on November 30 and December 31. The "experience factor" is determined by dividing the average monthly deposit balance for the preceding period May 1 through October 30 into the total interest expense credited to the savings accounts on November 1. The factor normally is a somewhat smaller percent than the official interest rate.

Interest expense for the first 5 months of each semiannual period is "accrued" in such manner, and on the interest payment date the charge to expense is adjusted to the actual payment to the depositors.

For the period 1954 through 1964, total deposits in savings accounts of Peoples Bank remained stable, with little short-term fluctuation and steady growth throughout. The following schedule reflects total deposits as of December 31 of each of the years and interests actually credited to the accounts on May 1:

| Year | Total deposits as of Dec. 31 | Interest credits on May 1 | Year | Total deposits as of Dec. 31 | Interest credits on May 1 |
|------|------|------|------|------|------|
| 1954 | $2,222,083.31 | $9,427.50 | 1960 | $3,897,299.97 | $42,255.12 |
| 1955 | 2,359,634.36 | 9,760.93 | 1961 | 4,626,908.90 | 54,967.50 |
| 1956 | 2,899,997.26 | 9,918.45 | 1962 | 5,367,013.79 | 63,867.11 |
| 1957 | 3,103,147.50 | 25,646.97 | 1963 | 5,860,239.81 | 74,658.60 |
| 1958 | 3,334,540.58 | 27,822.15 | 1964 | 6,118,348.82 | 90,192.02 |
| 1959 | 3,497,273.21 | 30,071.56 | | | |

The following table shows petitioner's computation of interest deductions connected with the savings accounts:

| TYE Dec. 31— | Unpaid interest for prior Nov. and Dec., accrued as of Dec. 31 of preceding taxable year | Interest actually paid during year | Unpaid interest for current Nov. and Dec., accrued as of Dec. 31 of taxable year | Total deductions claimed for interest on savings accounts for taxable year |
|---|---|---|---|---|
| 1953 | $3,168.59 | $18,885.11 | $3,330.21 | $19,046.73 |
| 1954 | 3,330.21 | 18,727.61 | 3,159.18 | 18,556.58 |
| 1955 | 3,159.18 | 19,553.31 | 3,357.02 | 19,751.15 |
| 1956 | 3,357.02 | 30,515.92 | 8,142.44 | 35,301.34 |
| 1957 | 8,142.44 | 52,099.79 | 9,091.49 | 53,048.84 |
| 1958 | 9,091.49 | 57,103.24 | 9,790.38 | 57,802.13 |
| 1959 | 9,790.38 | 60,378.80 | 10,346.32 | 60,934.74 |
| 1960 | 10,346.32 | 91,847.04 | 17,371.99 | 98,872.71 |
| 1961 | 17,371.99 | 115,610.59 | 20,989.79 | 119,228.39 |
| 1962 | 20,989.79 | 133,161.43 | 24,535.05 | 136,706.69 |
| 1963 | 24,535.05 | 154,780.90 | 29,298.50 | 159,544.35 |
| 1964 | 29,298.50 | 188,366.95 | 37,076.09 | 196,144.54 |

Peoples Bank uses a portion of all deposits to make loans and investments from which it derives income. Often it loans amounts to its own savings-passbook holders, using the passbooks as collateral. Generally this is done near the end of one of the semiannual periods ending on May 1 or November 1 so that the depositor may have the full amount of his deposits in his account for the entire 6 months entitling him to interest on that amount. The interest charge on such loans is 2 percent above the current rate payable on the passbook savings accounts. Income is earned and accrued during the months of November and December on all investments and loans made by Peoples Bank.

The method employed by Peoples Bank to accrue interest expense complies with generally accepted accounting principles.

Respondent determined that Peoples Bank must accrue interest expense only in the year actually credited to the savings accounts and disallowed excess accrued expenses of $3,545.26 in 1962, $4,763.45 in 1963, and $7,577.59 in 1964. An adjustment of $17,333.51 was made pursuant to section 481(a)(2) for the year 1962, increasing taxable income by a total of $20,878.77.

OPINION

Petitioner's principal argument is that, pursuant to its longstanding and generally accepted method of accounting, it properly deducted as an interest expense the balance of a reserve existing at the end of each year in issue which reflected the estimated portion of actual interest credits to be made to savings accounts on May 1 of the following year which were allocable to the months of November and December of the taxable year. Petitioner argues alternatively that if the interest expense deduction was accrued in the wrong year "no adjustments under section 481 are allowable because petitioner's income was clearly reflected and there is no change in its method of accounting."

Respondent's position is that since petitioner's liability for interest on funds on deposit for the 6 months ended May 1 of each year did

not become "fixed" until May 1, petitioner improperly accrued a portion of the expense in November and December of the preceding year. Since this determination involves an adjustment of a material item, it is argued, respondent has initiated a change in accounting method, and section 481 applies to prevent a double deduction of $20,989.79 which had been accrued and deducted by petitioner as of December 31, 1961, and which represented the interest expense for November and December of that year. Respondent concedes that "the section 481(a) (2) adjustment should be reduced by the amount of the $3,330.21 balance in the account as of December 31, 1953, since section 481 here does not apply to pre-1954 years."

Broadly stated, this controversy poses the often litigated question whether a particular method of accounting clearly reflects income within the meaning of the Internal Revenue Code. Section 446 provides, *inter alia:*

SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

The regulations promulgated under section 446 amplify its provisions by stating generally that since no uniform method of accounting can be prescribed for all taxpayers, each may adopt a system he feels is best suited to his needs.[4]

With respect to the accrual of contingent liabilities, however, this broad discretion granted to taxpayers has been sharply circumscribed by the regulations [5] and case law. The basic requisite to the accrual of

---

[4] Sec. 1.446–1(a). *General rule.* (1) Section 446(a) provides that taxable income shall be computed under the method of accounting on the basis of which a taxpayer regularly computes his income in keeping his books. The term "method of accounting" includes not only the overall method of accounting of the taxpayer but also the accounting treatment of any item. * * *

(2) It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income. A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions or practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year.

[5] Sec. 1.446–1(c)(ii) *Accrual method.* Generally, under an accrual method, income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. Under such a method, deductions are allowable for the taxable year in which all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy.

a liability is that the obligation to pay some amount is fixed and certain. *Oberman Manufacturing Co.*, 47 T.C. 471 (1967); *Brown* v. *Helvering*, 291 U.S. 193 (1934); *United States* v. *Anderson*, 269 U.S. 422 (1926). If such is the case, a liability may be accrued even though the exact amount is not definitely ascertained but is "susceptible of estimate with reasonable accuracy." *Harrold* v. *Commissioner*, 192 F. 2d 1002, 1006 (C.A. 4, 1951).

It is clear, and petitioner does not contend otherwise, that under the contractual arrangement with the holders of passbook savings accounts, petitioner had incurred through the end of each calendar year no obligation to pay interest.[6] At that time not only the amount of liability but the very existence of liability was indefinite and unascertained. It cannot be gainsaid that the management of Peoples Bank acted as prudent businessmen in setting up a reserve to anticipate the interest expense. Expert testimony in this record indicates that in so doing they were following generally accepted accounting principles. However, the "prudent business man often sets up reserves to cover contingent liabilities. But they are not allowable as deductions." *Lucas* v. *American Code Co.*, 280 U.S. 445, 452 (1930). And the added fact that Peoples Bank utilized a method of estimating the allocable expenses that was demonstrably accurate is insufficient to overcome the basic absence of a fixed liability. *Oberman Manufacturing Co.*, *supra*.

Petitioner's arguments, based upon certain equitable considerations, may be summarily disposed of. Respondent is not estopped from making a recomputation because of petitioner's longstanding and unchallenged accounting method. *Caldwell* v. *Commissioner*, 202 F. 2d 112 (C.A. 2, 1953), modifying and affirming a Memorandum Opinion of this Court; *Niles Bement Pond Co.* v. *United States*, 281 U.S. 357 (1930). Moreover, "the fact that a taxpayer's books, records, and accounting method meet requirements of other Federal or State agencies does not bind the Commissioner, who may independently determine whether they 'clearly reflect income.'" *Citizens Federal Savings & Loan Assn. of Covington*, 30 T.C. 285, 294 (1958).

Petitioner acknowledges that its position is incompatible with the regulations and established case law but nevertheless urges us to overturn them on the higher authority of the general provisions of the Code. We view the regulations and supportive case law as consonant with and a reasonable statement of the relevant provisions of the Internal Revenue Code. In effect, petitioner invites us to reenact by judicial fiat the provisions of section 462 [7] which was retroactively

---

[6] See fn. 3, *supra*.

[7] Generally, sec. 462 allowed a deduction for a reasonable addition to a reserve for estimated expenses which were attributable to the income of the taxable year.

repealed by Public Law 74, June 15, 1955. This we decline to do for obvious reasons.

The scope of respondent's discretion in this area was delineated by Mr. Justice Brandeis in *Lucas* v. *American Code Co., supra* at 449:

the direction that net income be computed according to the method of accounting regularly employed by the taxpayer is expressly limited to cases where the Commissioner believes that the accounts clearly reflect the net income. Much latitude for discretion is thus given to the administrative board charged with the duty of enforcing the Act. Its interpretation of the statute and the practice adopted by it should not be interfered with unless clearly unlawful.

We conclude that Peoples Bank improperly accrued interest expense for the months of November and December of the years in issue and that respondent did not abuse his discretion in requiring a change.[8] In reply to petitioner's contention that this result does not perfectly match expenses with income, we borrow Mr. Justice Holmes' words in *Weiss* v. *Wiener*, 279 U.S. 333, 335 (1929):

The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a businessman would take into account in determining the pecuniary condition of the taxpayer.

We further conclude that respondent made a proper adjustment under the provisions of section 481(a)(2). The term "method of accounting" includes the accounting treatment of any item. Sec. 1.446–1(a)(1), Income Tax Regs. The treatment initiated by respondent was a change in the treatment of a material item, thus constituting a change in petitioner's method of accounting. *Oberman Manufacturing Co., supra.*

*Decision will be entered under Rule 50.*

---

[8] See Rev. Rul. 67–352, 1967–2 C.B. 176.