BURLINGTON NORTHERN RAILROAD COMPANY, FORMERLY BURLINGTON NORTHERN INC., SUCCESSOR BY MERGER TO ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9867–80.     Filed January 24, 1984.

*Donald C. Knickerbocker, George A. Morrison*, and *Steven L. Wood*, for the petitioner.

*Michael J. Cooper*, for the respondent.

OPINION

COHEN, *Judge*: In a statutory notice of deficiency dated March 21, 1980, respondent determined deficiencies in petitioner's Federal income taxes for 1974 and 1975 in the

amounts of $538,940.21 and $943,047.86, respectively. After concessions, the sole issue for determination is whether petitioner, a calendar year accrual basis taxpayer, may accrue and deduct in 1974 and 1975 the employer's portion of Railroad Retirement Tax Act taxes on yearend salaries where the salaries were properly accruable in those years, but the salaries and taxes thereon were not payable until 1975 and 1976, respectively.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by this reference. The pertinent facts are summarized below.

At the time the petition herein was filed, St. Louis–San Francisco Railway Co. (petitioner) was a Missouri corporation with its principal place of business in St. Louis, Mo. Petitioner timely filed its income tax returns for 1974 and 1975 with the Internal Revenue Service Center, Kansas City, Mo. Burlington Northern Railroad Co. is the successor to St. Louis–San Francisco Railway Co. pursuant to a merger effective November 21, 1980.

During the years in issue, petitioner was a common carrier railroad operating in interstate commerce. As a railroad, petitioner was subject to the Railroad Retirement Tax Act (RRTA), sections 3201 through 3233.[1] Under the provisions of that act, for the year 1974, petitioner was required to pay RRTA tax at the rate of 15.35 percent of that portion of each employee's monthly earnings that did not exceed $1,100 (the wage "ceiling," *infra* note 2). For the year 1975, petitioner was required to pay RRTA tax at the rate of 15.35 percent of each employee's monthly earnings that did not exceed $1,175.

Petitioner maintained three separate payrolls: (1) An "officers'" payroll; (2) an "advance" payroll covering salaried employees and certain union employees; and (3) a "delayed" payroll covering the remainder of the union employees. The employees on the officers' and advance payrolls were paid on the 1st and 16th days of each month for services rendered in the preceding 15-day period. Employees on the delayed payroll were paid on the last day of each month for wages earned in the first half of the month and on the 15th day of the

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

succeeding month for wages earned during the second half of the month. An employee on the delayed payroll system was paid for services performed between the 16th and 31st of December on January 15 of the following year.

Petitioner maintained its books and records and prepared its Federal income tax returns on a calendar year basis and utilized the accrual method of accounting. In accordance with accounting practices followed since at least 1950, petitioner accrued on its books and on its Federal income tax returns as of December 31, 1974, and December 31, 1975, delayed payroll wages of $4,083,803.14 and $4,350,075.85, respectively, earned during the second half of December of each of those years. Petitioner also accrued as of December 31, 1974, and December 31, 1975, RRTA taxes of $529,022.56 and $516,205.10, respectively, attributable to those delayed payroll wages.

At the end of each calendar year, petitioner was unconditionally obligated to pay the employees on the delayed payroll for the wages earned during the second half of December, and petitioner was able to calculate the amount of RRTA taxes thereon with reasonable accuracy. Petitioner's method of accruing the delayed payroll wages and RRTA taxes was consistently followed and was in accordance with generally accepted accounting principles. Such accrued wages and RRTA taxes were actually paid by petitioner sometime after January 1 of each succeeding year.

Each of petitioner's returns for the years 1950 through the years in issue were examined by respondent, and no adjustment was made for any of those years prior to 1974 with respect to petitioner's accrual of RRTA taxes on yearend wages paid in each succeeding year.

In his notice of deficiency, respondent determined that petitioner improperly accrued and deducted the RRTA taxes that were attributable to delayed payroll wages earned in 1974 and 1975 but not payable until 1975 and 1976, respectively.

Petitioner argues (1) that because its method of accruing and deducting RRTA taxes was consistently followed, was in accordance with generally accepted accounting principles, and was not challenged by respondent in previous examinations, respondent should be estopped from denying such deductions; and (2) that the accrual and deduction of the RRTA taxes was proper under sections 446 and 461.

Numerous cases have considered and rejected equivalents of petitioner's first argument. For example, in *Electric & Neon, Inc. v. Commissioner*, 56 T.C. 1324 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974), this Court held that the fact that an erroneous accounting method was consistently followed and was not challenged in prior years did not foreclose respondent from correcting that erroneous treatment. See also *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180 (1957). Similarly, in *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522 (1979), the Supreme Court held that the fact that a taxpayer's accounting method was in accordance with generally accepted accounting principles did not estop the Commissioner from determining that such method of accounting did not clearly reflect income for tax purposes. Accordingly, the resolution of this case depends on the validity of petitioner's second argument.

Section 461(a) states the general rule that a taxpayer is allowed a deduction in "the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." For accrual basis taxpayers such as petitioner, section 1.461–1(a)(2), Income Tax Regs., provides:

Under an accrual method of accounting, an expense is deductible for the taxable year in which *all the events* have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * * While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy. * * * [Emphasis supplied.]

The "all the events" test in the regulation quoted above was first enunciated in *United States v. Anderson*, 269 U.S. 422, 440–441 (1926), wherein the Supreme Court stated:

Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. * * *

It is apparent from the *Anderson* holding and from the principles set forth in the regulations that petitioner must satisfy two requirements before it can properly deduct the accrued RRTA taxes during the taxable years in issue. See *Ohio River Collieries Co. v. Commissioner*, 77 T.C. 1369, 1372–1373 (1981). First, all events that determine the fact of liability must have occurred as of the end of the year for which petitioner seeks to accrue the liability. This requirement prevents the deduction of an expenditure that might never be made. *Southern Pacific Transportation Co. v. Commissioner*, 75 T.C. 497, 634 (1980); *World Airways, Inc. v. Commissioner*, 62 T.C. 786, 802 (1974), affd. 564 F.2d 886 (9th Cir. 1977). The second requirement is that as of the end of the year for which petitioner seeks to accrue the liability, petitioner must be able to estimate with reasonable accuracy the amount of the expenditure to be made in the subsequent year. This requirement provides an element of certainty, although it is not essential that the precise amount of the expenditure be definitely ascertained. *Southern Pacific Transportation Co. v. Commissioner, supra* at 634; *Peoples Bank & Trust Co. v. Commissioner*, 50 T.C. 750, 755 (1968). The failure to satisfy either requirement of this two-part test would be fatal to petitioner's claim.

The parties herein have stipulated that as of December 31, 1974, and December 31, 1975, petitioner was able to calculate with reasonable accuracy the amount of RRTA taxes attributable to the delayed payroll wages earned during the second half of December of each of those years. Thus, the second requirement of the all events test was satisfied. The only question remaining is whether all events necessary to determine the fact of petitioner's liability for the RRTA taxes had occurred as of December 31 of each of those years.

The then Court of Claims was faced with a similar question in *Eastman Kodak Co. v. United States*, 209 Ct. Cl. 365, 375–377, 534 F.2d 252, 259–260 (1976). In that case, an accrual basis calendar-year taxpayer accrued and deducted payments under the Federal Insurance Contributions Act, the Federal Unemployment Tax Act, and various State unemployment taxes attributable to wages earned during the last week of the year but not payable until the first week of the subsequent

year.[2] In allowing the claimed payroll tax deduction, the court stated:

> The first compensation payment we consider is the "year-end" wages which were earned in 1964, but paid the first week of 1965. No one disputes the fact that plaintiff was totally and unequivocally obligated to pay the wages as of the end of 1964. Plaintiff has demonstrated that its legal obligation to pay the "year-end" wages was fixed, certain, and exactly ascertained upon the termination of that tax year. It properly deducted the "year-end" wage expense from its 1964 income. Concurrently, plaintiff's obligation for payroll tax on the "year-end" wages also became *fixed* and *certain* as an automatic consequence of the definite and legal obligation to pay the "year-end" wages. All that was required of plaintiff to determine its tax was a simple, precise, mathematical calculation. *Nothing* depended on the taxpayer's discretion or on outside events which might or might not occur. The payroll taxes on "year-end" wages meet the "all events" test, and plaintiff is entitled to deduct them on its 1964 return. [209 Ct. Cl. at 377, 534 F.2d at 259–260. Fn. ref. omitted.]

In the present case, as in *Eastman Kodak*, petitioner was totally and unequivocally obligated to pay the delayed payroll wages as of the end of each year in issue. Respondent concedes that petitioner properly accrued and deducted such wages. Respondent argues, however, (1) that the holding of the Supreme Court in *Otte v. United States*, 419 U.S. 43 (1974), requires us to hold that payroll taxes are not deductible until the underlying compensation is paid; (2) that the Court of Claims in *Eastman Kodak* applied an incorrect standard for determining whether the fact of the taxpayer's liability for payroll taxes had occurred as of the end of the year; and (3) that the proper standard requires the existence of a *legal* liability as of the end of the year before a deduction may be properly accrued.

In *Otte*, a trustee in bankruptcy argued that because neither the United States nor New York City had timely filed proofs of claim against the bankrupt for withheld payroll taxes, the taxes could not be recovered. The Court held otherwise, stating:

---

[2]We conclude that the legal analysis applicable to the different types of taxes should be the same although the wage "ceilings" involved in *Eastman Kodak* are expressed in annual amounts, whereas RRTA taxes are limited by monthly rates. See *Eastman Kodak Co. v. United States*, 209 Ct. Cl. 365, 376 n. 11, 534 F.2d 252, 259 n. 11.

This argument, in our view, misconceives the nature of the taxes that are to be withheld. *Liability for the taxes accrues only when the wage is paid.* Sections 3402(a) and 3101(a) of the 1954 Code; New York City Administrative Code secs. T46–51.0(a) and U46–8.0. The wages that are the subject of the wage claims, although earned before bankruptcy were not paid prior to bankruptcy. Freedomland had incurred no liability for the taxes. Liability came into being only during bankruptcy. The taxes do not partake, therefore, of the nature of debts of the bankrupt for which proofs of claim must be filed. [*Otte v. United States, supra* at 55. Emphasis supplied.]

According to respondent, the emphasized portion of the above quoted passage is dispositive of the present issue. We reject this argument for the reasons stated below.

The *Otte* decision rests on bankruptcy law and does not address tax accounting principles. As the Court of Claims stated in *Eastman Kodak Co. v. United States, supra* at 257:

To say, as defendant argues, that *Otte* alters the "all events" test, confuses two very different concepts. The *Otte* decision hinges upon the accrual of legal liability. The "all events" test measures the proper timing for expense deductions. The technical term "accrual" as used in *Otte* refers to the time that a liability comes into existence as a *legally enforceable claim.* The "all events" test on the other hand looks to a liability that is so fixed that the fact of liability is certain and the amount thereof reasonably ascertainable, although not necessarily legally enforceable. The "all events" test thus allows deductions when the taxpayer has a special kind of knowledge which gives him enough facts to demonstrate the absolute necessity of paying an expense at some future date without regard to such matters as actual payment taking place, existence of legal liability, or accrual. Therefore, we cannot construe the *Otte* language as affecting the "all events" test since *Otte* is based on a concept of "accrual" which has no relation to the problem of deduction timing.

Respondent's argument that the court in *Eastman Kodak* applied an incorrect standard for determining whether the fact of the taxpayer's liability for payroll taxes had occurred as of the end of the year is equally unpersuasive. A taxpayer's method of accounting must clearly reflect income. Sec. 446(b). "A method of accounting which reflects the consistent application of generally accepted accounting principles * * * will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year." Sec. 1.446–1(a)(2), Income Tax Regs. The parties have stipulated that petitioner's method of accruing RRTA taxes was in accordance with generally accepted accounting principles and was applied on a consistent basis.

Thus, absent some rule to the contrary, petitioner's accrual and deduction of the RRTA taxes would ordinarily be permissible. Respondent, however, has broad powers in determining whether an accounting method used by a taxpayer clearly reflects income, and his interpretation of the statute's clear reflection standard should not be interfered with unless it is clearly erroneous. *Thor Power Tool Co. v. Commissioner, supra; Commissioner v. Hansen*, 360 U.S. 446, 447 (1959); *Lucas v. American Code Co.*, 280 U.S. 445, 449 (1930). We must therefore consider whether respondent abused his discretion in determining that petitioner may not accrue the RRTA taxes.

Inherent in the concept of an accounting method clearly reflecting income is the "matching" of items of income with the items of expense and applying them to an appropriate period. "The purpose of the 'matching' concept in accounting theory is to match the income earned by the taxpayer in a certain period with the costs attributable to producing such income in that period." *Electric & Neon, Inc. v. Commissioner, supra* at 1335. The parties agree that the delayed payroll wages were deductible in the year that they were earned. There is no logical reason why the payroll taxes appurtenant to such wages should be treated differently and deductible in a different period. As indicated above, one of the purposes of the all events test is to prevent the deduction of an expenditure that might never be made. *Southern Pacific Transportation Co. v. Commissioner, supra; World Airways, Inc. v. Commissioner, supra*. Under the facts of this case, that purpose was satisfied. All of the events that fixed the amount, timing, and fact of liability for the RRTA taxes had occurred as of the end of each year at issue. Nothing depended on petitioner's discretion or on outside events that might or might not occur. As the Court of Claims said in *Eastman Kodak Co. v. United States*:

If we * * * conclude that no payroll tax deduction can be taken until the underlying wage is *paid*, we would create a further split between tax and business accounting *without* a reasonable explanation for requiring different treatment. Absent a compelling basis providing otherwise, our goal should be to reconcile business and tax treatment of an item, rather than to drive them farther apart. [209 Ct. Cl. at 374, 574 F.2d at 258.]

We therefore conclude that the denial of the deductions for RRTA taxes in the same year that the underlying wages were earned was an abuse of respondent's discretion.

Respondent's final argument is that the all events test requires the existence of a *legal* liability as of the end of the year before a deduction may be properly accrued. Although respondent cites several cases in support of this argument, none of those cases is on point. Each of the cases cited by respondent was concerned with whether the fact of liability, the amount of liability, or the fact of payment remained contingent as of the taxpayer's yearend. Contingency of any one of those elements precludes deductibility. Respondent has not cited, and we have not found, any authority supporting the contention that legal liability is a requisite to satisfaction of the all events test. In most situations, including those cases cited by respondent, the fact of liability and the imposition of legal liability occur simultaneously. In the present case, however, the amount of the liability may be determined with reasonable accuracy and all events determining the fact of the liability occur prior to yearend. Thus the purposes of the all events test are satisfied, and the taxpayer may properly accrue and deduct the expense even though legal liability may not exist until the subsequent year.

We again decline to decide, because it is not necessary to this case, whether respondent is correct in his contention that legal liability for the taxes in issue does not accrue until the wages are paid. See *Southern Pacific Transportation Co. v. Commissioner, supra* at 642. We note, however, that *Otte v. United States, supra,* may not be controlling because it involved the obligation to remit the employee's portion of taxes, i.e., the withheld amounts, rather than taxes on the employer such as those in issue here and in *Eastman Kodak Co. v. United States, supra.*

Due to concessions and to reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.