T.C. Memo. 2003-95

UNITED STATES TAX COURT


COLOR ARTS, INC., JOHN P. CSEPELLA, A PERSON OTHER THAN THE TAX
            MATTERS PERSON, Petitioner v.
    COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5619-00.                    Filed March 31, 2003.


    Jeffrey R. Brodek, for petitioner.

    J. Paul Knap, for respondent.


                MEMORANDUM OPINION


    RUWE, Judge:  This case is before the Court fully stipulated
under Rule 122.[1]  The stipulation of facts, supplemental

_____

    [1]All Rule references are to the Tax Court Rules of Practice
and Procedure, and unless otherwise indicated, all section
references are to the Internal Revenue Code in effect for the
year at issue.

stipulation of fact, stipulation of settled issue and remaining issue, and the accompanying exhibits are incorporated herein by this reference.

This case arises from a Notice of Final S Corporation Administrative Adjustment (FSAA) issued by respondent adjusting Color Arts, Inc.'s (Color Arts) Federal income tax return for its taxable year ending December 31, 1996 (1996 return). Respondent concluded, and petitioner has now conceded, inter alia, that a $245,000 deduction for accrued vacation pay claimed on Color Arts's 1996 return was not allowable.[2] The sole issue for decision is whether Color Arts's method of accounting for vacation pay has been changed so as to require an adjustment pursuant to section 481(a).

Background

During the period at issue, Color Arts was an S corporation within the meaning of the Code. Color Arts filed Form 1120S, U.S. Income Tax Return for an S Corporation, for its tax year ended December 31, 1996. Color Arts's overall method of accounting was the accrual method.

At the time the FSAA was issued and the petition was filed, Color Arts's principal place of business was located in Racine, Wisconsin.

---

[2]The FSAA contained another adjustment, but that issue was resolved by the parties.

Vacation Pay Deduction

On its 1996 return, Color Arts claimed a deduction of $1,368,653.06 in salaries and wages.  Included in this figure was accrued vacation pay of $245,000.  Respondent disallowed the claimed deduction for vacation pay (disallowed vacation pay).

Under Color Arts's vacation pay policy, employees were eligible to earn vacation pay conditionally during the year.  However, except in the case of death, disability, or retirement, an employee was not entitled to receive vacation pay "earned" during the year unless the employee was still employed by Color Arts on the first working day of the following year.  The first working day of 1996 was January 2, 1996, and the first working day of 1997 was January 2, 1997.  Petitioner concedes that the $245,000 accrued vacation pay was improperly deducted because that expense was not properly accrued as of the end of 1996.  The parties also agree that the $245,000 disallowed vacation pay deduction is properly claimed on Color Arts's 1997 return.

Color Arts had the same vacation pay policy in force and accounted for accrued vacation pay in the same way in 1994 and 1995 that it had in 1996.  On its 1995 return, Color Arts claimed a deduction for accrued vacation pay in the amount of $271,671.04, which was attributable to employment during 1995.  The $271,671.04 vacation pay deduction claimed on Color Arts's 1995 return did not accrue until the first working day of 1996.

Thus, the $271,671.04 deduction for vacation pay was prematurely claimed on Color Arts's 1995 return and should have been deducted on Color Arts's 1996 return. Respondent did not examine Color Arts's return for any period before 1996.[3]

Color Arts never requested consent from respondent to change its method of accounting for vacation pay for 1996.

Discussion

1. Color Arts's Entitlement to Deduction of Accrued Vacation Pay

In the petition, petitioner argues that Color Arts is entitled to claim on its 1996 return a deduction of $271,671.04 for vacation pay properly accrued in 1996. For support, petitioner looks to section 461(a) and the regulations promulgated thereunder. Petitioner argues that under the "all events" test the $271,671.04 of vacation pay accrued in 1996. Secs. 461(h); 1.461-1(a)(2), Income Tax Regs. Respondent does not dispute petitioner's contention; his briefs assume Color Arts's entitlement to the $271,671.04 deduction in 1996. However, respondent argues that since Color Arts's method of accounting for accrued vacation pay has been changed, an

---

[3]The period of limitations on assessment for taxable years before 1996 has expired.

adjustment under section 481(a) should be made to avoid a duplication of the deduction.[4]

2.  Section 481(a) Adjustment

Section 481 mandates the imposition of an "adjustment" determined "to be necessary solely by reason of the change [in accounting method] in order to prevent amounts from being duplicated or omitted".  Sec. 481(a)(2).  The required adjustment is made in the "year of the change".  Sec. 1.481-1(a)(1), Income Tax Regs.  "The 'year of the change' is the taxable year for which the taxable income of the taxpayer is computed under a method of accounting different from that used for the preceding taxable year."  Id.  Here, the year of the purported change is 1996. Without a section 481(a) adjustment of a like amount, Color Arts would receive a duplicate deduction of $271,671.04.

Petitioner argues that there was no change made in Color Arts's method of accounting, and therefore section 481 has no application.

3.  Change of Accounting Method

Generally, taxable income must be computed under the method of accounting by which the taxpayer regularly computes his income

---

[4]Respondent contends that if Color Arts is entitled to a deduction of $271,671.04 on its 1996 return for accrued vacation pay, without the imposition of a sec. 481 adjustment in the same amount, Color Arts will receive a double deduction.  As stated above, Color Arts already deducted $271,671.04 as "accrued" vacation pay on its 1995 return.

on his books.  Sec. 446(a).  However, if the method of accounting employed by the taxpayer does not clearly reflect income, "the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." Sec. 446(b).  Respondent adjusted Color Arts's income concluding that it was improperly deducting accrued vacation pay.[5]

The parties agree that Color Arts's method of computing its deduction for vacation pay was incorrect.  However, the parties disagree on how this error should be perceived and thus labeled. Respondent argues that he changed Color Arts's method of accounting, and petitioner argues that Color Arts merely "overlooked" a fact in computing the deduction.  Petitioner contends that Color Arts made a factual error in preparing its 1996 income tax return when it overlooked the fact that employees had to be employed on the first working day of 1997 in order to earn vacation pay attributable to work performed in 1996.  As discussed infra, we agree with respondent that Color Arts's method of accounting for vacation pay was changed.

---

[5]Respondent has broad authority to change Color Arts's method of accounting if in his opinion it does not clearly reflect income.  Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 540 (1979).

The Code does not specifically define "accounting method".[6]
However, "A change in the method of accounting includes a change
in the overall plan of accounting for gross income or deductions
or a change in the treatment of any material item used in such
overall plan." Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. A
method of accounting includes "the consistent treatment of a
recurring, material item, whether that treatment be correct or
incorrect."[7] H.F. Campbell Co. v. Commissioner, 53 T.C. 439, 447
(1969), affd. 443 F.2d 965 (6th Cir. 1971). "A change in method
of accounting occurs even when there is a change from an
incorrect to a correct method of accounting." Wayne Bolt & Nut
Co. v. Commissioner, 93 T.C. 500, 511 (1989) (citing First Natl.
Bank of Gainesville v. Commissioner, 88 T.C. 1069, 1085 (1987),
H.F. Campbell Co. v. Commissioner, supra; Dearborn Gage Co. v.
Commissioner, 48 T.C. 190, 197-198 (1967)). "A material item is
any item which involves the proper time for the inclusion of the

_____

[6]Sec. 446(c) dictates the accounting methods which taxpayers
may use in computing their taxable income. Among the permissible
methods are "(1) the cash receipts and disbursements method; (2)
an accrual method; * * * or (4) any combination of the foregoing
methods".

[7]Consistent treatment of an item is shown by 2 or more
taxable years of application. Johnson v. Commissioner, 108 T.C.
448, 494 (1997), affd. in part and revd. in part 184 F.3d 786
(8th Cir. 1999); Rev. Proc. 97-27, 1997-1 C.B. 680; cf. sec.
1.446-1(e)(2)(ii)(a), Income Tax Regs. ("Although a method of
accounting may exist under this definition without the necessity
of a pattern of consistent treatment of an item, in most
instances a method of accounting is not established for an item
without such consistent treatment.").

item in income or the taking of a deduction." Sec. 1.446-1(e)(2)(ii)(<u>a</u>), Income Tax Regs.; see <u>Knight-Ridder Newspapers, Inc. v. United States</u>, 743 F.2d 781, 798 (11th Cir. 1984); <u>Wayne Bolt & Nut Co. v. Commissioner</u>, <u>supra</u> at 510. Accordingly, "An accounting practice involving the timing of when an item is deducted is considered a method of accounting." <u>FPL Group, Inc. v. Commissioner</u>, 115 T.C. 554, 562 (2000) (citing <u>GMC v. Commissioner</u>, 112 T.C. 270, 296 (1999)).

However, a change in a method of accounting does not occur when the taxpayer seeks to correct a mathematical or posting error, an error in the computation of tax liability, a change in the treatment of an item based upon a change in the underlying facts, or any other "'adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction.'" <u>FPL Group, Inc. v. Commissioner</u>, <u>supra</u> at 570 (quoting <u>N. States Power Co. v. United States</u>, 151 F.3d 876, 883 (8th Cir. 1998)); sec. 1.446-1(e)(2)(ii)(<u>b</u>), Income Tax Regs.

Petitioner argues that the disallowance of Color Arts's $245,000 deduction for vacation pay was based on a change in the underlying facts and not a change to its method of accounting. Petitioner relies upon an example in the regulations. In the example, an overall accrual method taxpayer changed from a "not completely vested" vacation pay plan to a "completely vested"

vacation pay plan. Sec. 1.446-1(e)(2)(iii), Example (3), Income Tax Regs. This change had the effect of accruing the vacation pay deduction in a different taxable year. The example explains that since there has been a change in the underlying facts, that is, a change in the type of vacation pay plan used by the taxpayer, the taxpayer has not changed his method of accounting. This example does not support petitioner's argument because, unlike the example in the regulations, Color Arts did not change the operative provisions of its vacation plan.

In the alternative, petitioner argues that the change in the way Color Arts computes its vacation pay deduction is simply the correction of a posting error or an error in the computation of its tax liability. See sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. Petitioner likens Color Arts's situation with that of taxpayers in cases like N. States Power Co. v. United States, supra, and Korn Indus., Inc. v. United States, 209 Ct. Cl. 559, 532 F.2d 1352 (1976). In N. States Power Co. v. United States, supra at 884, the taxpayer's tax department was unaware that certain capital accounts included unrecouped losses. The taxpayer filed a refund claim "when it learned that the work order account included currently deductible contract losses. In so doing, it sought to treat the * * * contract losses in the same manner that it has consistently treated similar types of losses". Id. at 884. The court held that the taxpayer's

mistakes were not an unauthorized change of accounting method, but more "akin to posting errors". Id. at 885. Similarly, in Korn Indus., the court held that where a taxpayer inadvertently forgot to include several categories of costs in calculating its finished goods inventory, the subsequent inclusion was not an accounting method change. As the court explained, the taxpayer "did not change to any different method." Id. at 1355.

Our reasoning in Wayne Bolt & Nut Co. v. Commissioner, supra, is more illustrative of Color Arts's situation. For numerous years before 1982, the taxpayer calculated its opening and ending inventory using a "seriously flawed" perpetual inventory record-keeping system. Id. at 508. Historically, the taxpayer verified inventory by taking a partial physical inventory. In 1982, the taxpayer performed a complete physical inventory which indicated that opening inventory for fiscal 1982 was 10 times greater than ending inventory reflected on the books and as originally reported for the end of the prior fiscal year. For its 1982 fiscal year, the taxpayer reconstructed its opening and ending inventory on the basis of the results of the complete inventory. We held that "Since * * * [the taxpayer's] pre-1982 method of determining inventory involved the proper time for reporting income, it was a 'material item'" and that the taxpayer's "change from a seriously flawed and disorganized method of determining inventory to a method of determining both

opening and ending inventory for fiscal year 1982 on the basis of a complete physical inventory [was] a change in the treatment of a material item and, therefore, constitutes a change in accounting method." Id. at 511; accord Knight-Ridder Newspapers, Inc. v. United States, supra; Firetag v. Commissioner, T.C. Memo. 1999-355 (the Commissioner's determination that the taxpayer had previously used an improper method of accounting which involved a systematic and consistent treatment of a significant item was not a computational or posting error but rather a change in his method of accounting), affd. 232 F.3d 887 (4th Cir. 2000).

The Court of Appeals for the Seventh Circuit, to which this case is appealable, has decided a substantially similar case. In Peoples Bank & Trust Co. v. Commissioner, 415 F.2d 1341 (7th Cir. 1969), affg. 50 T.C. 750 (1968), the taxpayer was a calendar year, overall accrual method bank which paid interest on its savings accounts. Because of the interplay between when the taxpayer paid interest and its tax year, for 2 months of the year the taxpayer calculated its interest expense on the basis of a "fairly accurate" experience factor, although the interest was not payable until the following tax year. Like here, the interest expense failed the "all events test" the Commissioner corrected the taxpayer's method, and imposed a section 481(a) adjustment. This Court agreed with the Commissioner and sustained his determination finding that the taxpayer's method of

accounting for interest expense was changed and that the adjustment was appropriate.  Before the Court of Appeals for the Seventh Circuit, the taxpayer argued, inter alia, that the improper accrual was not a change of accounting method but was a change of a single item.  The court disagreed and explained:

> Section 446(c) defines accounting methods which may be used in computing taxable income.  Among those included are "(1) the cash receipts and disbursements method; (2) an accrual method; * * * (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate."  An item which has been improperly accrued before it is due would be included in "any combination of the foregoing methods." [Id. at 1344 (citing Graff Chevrolet Co. v. Campbell, 343 F.2d 568, 569-571 (5th Cir. 1965)); see sec. 446(c).]

Accordingly, the court held that the Commissioner changed the taxpayer's method of accounting for interest expense and applied section 481, stating:

> When a taxpayer uses an accounting method which reflects an expense before it is proper to do so or which defers an item of income that should be reported currently, he has not succeeded (and does not purport to have succeeded) in permanently avoiding the reporting of any income; he has impliedly promised to report that income at a later date, when his accounting method, improper though it may be, would require it.  Section 481, therefore, does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set at rest. [Id. at 1344.]

Similarly in this case, Color Arts's method of accounting for accrued vacation pay has been changed.  Before respondent's

administrative adjustment, Color Arts used an improper method of accounting that failed to consider the conditional element of its vacation pay policy. As a result, Color Arts consistently and systematically claimed vacation pay deductions before their proper accrual.[8] See sec. 461(h); H.F. Campbell Co. v. Commissioner, 53 T.C. at 447. Under Color Arts's improper method of accounting, the deduction for vacation pay was accelerated; it is clearly a "material item" within the contemplation of the regulations since it "involves the proper time for * * * taking of a deduction." Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. The premature deduction of accrued vacation pay was not due to a computational or posting error. The only "error" Color Arts cites is its application of an improper method of accounting which resulted in the deduction of vacation pay before its proper accrual. Accordingly, we hold that Color Arts's method of accounting for its vacation pay has been changed and, as a result, that section 481 is applicable.

We disagree with petitioner that if we impose a section 481(a) adjustment, Color Arts will lose "whatever proper deduction that it should have taken in 1995 because that year is now a barred tax year under the statute of limitations". The record demonstrates that Color Arts has employed the same

---

[8]As stated above, Color Arts employed this improper method of accounting for vacation pay for at least 3 consecutive tax years.

erroneous method of accounting for vacation pay since at least 1994.[9]  Since the record is silent, we assume that on its 1994 return Color Arts also prematurely claimed a deduction for vacation pay which (under the corrected method) should have been claimed on its 1995 return.  On its 1995 return, Color Arts prematurely claimed a $271,671.04 deduction for vacation pay.  Respondent examined only Color Arts's 1996 return.[10]  Respondent concluded, and petitioner agrees, that the $245,000 deduction for accrued vacation pay claimed by Color Arts on its 1996 return should have been claimed on Color Arts's 1997 return.

The record demonstrates that Color Arts consistently claimed a deduction for vacation pay a year before its proper accrual, and there is no evidence that any vacation pay deductions are lost by the imposition of the section 481(a) adjustment.  However, the failure to impose such an adjustment will allow Color Arts to keep the $271,671.04 deduction it claimed in 1995 in addition to the $271,671.04 deduction in 1996.

Conclusion

We hold that Color Arts's method of accounting for its vacation pay has been changed.  Color Arts is entitled to a

_____

[9]The record does not indicate how long Color Arts has employed the erroneous method of premature deduction.  Given our reasoning, infra, we do not think this absence is of substantive significance.

[10]See supra note 3.

deduction of $271,671.04 of accrued vacation pay on its 1996 return.  However, to avoid the duplication of a deduction as a result of the change in method of accounting, a section 481(a) adjustment in the amount of $271,671.04 is appropriate.

An appropriate order will
be issued.[11]

---

[11]In his brief, respondent stated that because the parties settled an issue before trial, a Rule 155 computation will be required.  Rule 155 contemplates only a "deficiency, liability, or overpayment" and is not appropriate under these circumstances. The Court does, however, anticipate that the parties will submit a proposed decision document stating the adjustments to Color Arts, Inc.'s 1996 income tax return.